MICHAEL QUINN, as Administrator, etc., Appellant, *v.* GEORGE H. POWER, Respondent.

Defendant was the owner of a ferry boat running across the Hudson river between H. and A. When the boat was making its regular trip across from A. to H., the pilot in charge took on at A. a boatman, agreeing without compensation, to put him on board his boat, which was part of a tow passing up the river. Similar acts had occasionally been done before, but without the knowledge or consent of the defendant. The ferry boat diverged from its course to reach the tow, and through the negligence of those in charge, collided with a canal boat attached thereto; upon which was plaintiff's intestate, who was thrown by the collision into the river and drowned. In an action to recover damages for the death, *held*, that those in charge of the ferry boat were, at the time of the accident, engaged in the defendant's business, and he was responsible for their negligent acts; and that, therefore, a direction of a verdict for him was error.

*Quinn* v. *Power* (17 Hun, 102), overruled.

(Argued January 18, 1882; decided January 24, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, made February 5, 1880, which affirmed a judgment in favor of defendant, entered upon a verdict directed by the court.

This action was brought to recover damages for alleged negligence in causing the death of John Fahey, plaintiff's intestate.

The defendant was the lessee of a ferry between the city of Hudson and the village of Athens, on the Hudson river, and was the owner of a ferry boat plying between said places. In June, 1874, the pilot in charge of said ferry boat, as it was about starting on a regular trip from Athens, invited on board a boatman belonging to a canal boat attached to a tow moving up the river, and promised to put him on board his boat. The ferry boat, in order to reach the tow, varied from its regular course. The deceased was on board of a canal boat attached to the tow which was struck by the ferry boat. Seeing its approach the deceased, in attempting to place a fender between the boats, was thrown into the river and drowned.

Further facts appear in the opinion.

*Jesse Johnson* for appellant. Defendant was liable as master for the acts of his agents in charge of the boat at the time of the accident, they being then engaged in his business. (*Cosgrove* v. *Ogden*, 49 N. Y. 255; *Day* v. *B'klyn City R. R. Co.*, 12 Hun, 435; affirmed, 76 N. Y. 593; *Rounds* v. *D. L. & W. R. R. Co.*, 64 id. 129; Wood on Master and Servant, § 307; *Higgins* v. *Watervliet Turnpike & R. R. Co.*, 46 N. Y. 23; *Shea* v. *Sixth Ave. R. Co.*, 62 id. 180; *Althorp* v. *Wolf*, 22 id. 355, 365; *Joel* v. *Morrison*, 6 C. & P. 501; *Sleath* v. *Wilson*, 9 id. 607; *P. & R. R. R. Co.* v. *Dearby*, 14 How. [U. S.] 468, 486, 487; *Phelon* v. *Stile*, 43 Conn. 426, 433; *Tull* v. *Weston*, 47 Vt. 634.)

*J. C. Newkirk* for respondent. If defendant's boat was used for any other purpose than a ferry boat by the persons in charge, to make defendant liable for their acts, it was necessary for plaintiff to show that such use was authorized by him. (*Cosgrove* v. *Ogden*, 49 N. Y. 255; *Cavanagh* v. *Dinsmore*, 12 Hun, 465; *Rounds* v. *D. L. & W. R. R. Co.*, 64 N. Y. 23; *Mott* v. *Consumers' Ice Co.*, 73 id. 543.) Defendant's employees had no right to receive a passenger to be carried to any other place or point than between Hudson and Athens, on the ferry route. (*Cosgrove* v. *Ogden*, 49 N. Y. 255, 257; 64 id. 133, 136; *Church* v. *Mansfield*, 20 Conn. 284; *Cavanagh* v.

*Dinsmore*, 12 Hun, 465.) Without proof of authority from defendant, express or implied, to the pilot to do what he was doing when the accident occurred, defendant cannot be made liable. (*Rounds* v. *D. L. & W. R. R. Co.*, 64 N. Y. 129; *Cosgrove* v. *Ogden*, 49 id. 255; *Mott* v. *Consumers' Ice Co.*, 73 id. 543.) In the absence of proof that the accident occurred through the negligence of those in charge of the boat, it was the duty of the court to nonsuit plaintiff. (*Curtis*. v. *Roch. & Syr. R. R. Co.*, 18 N. Y. 534; *Spencer* v. *B'klyn R. R. Co.*, 14 id. 230; *Quinn* v. *Power*, 17 Hun, 102.)

FINCH, J. The dispute here is over the application of a general rule to a particular transaction, neither party questioning the rule, but each following it to a result favorable to himself, and fatal to his adversary. That the master is liable for the negligence or misfeasance of the servant while the latter is acting in the master's business, and within the scope of the servant's employment is not disputed. (*Rounds* v. *Del., L. & West. R. R. Co.*, 64 N. Y. 129; *Cosgrove* v. *Ogden*, 49 id. 255; *Ochsenbein* v. *Shapley*, 85 id. 214.) Nor is it denied that such liability exists notwithstanding the fact that the servant's negligent act is contrary to the master's direction, and, as between the two, a violation of the duty which the latter owes to the former. It is not correct, therefore, and leads to an erroneous result, to describe the master's freedom from liability as arising where the servant has departed from his "line of duty in" his master's business, which is a mode of stating the rule adopted in the opinion of the. General Term upon the first argument of this case before that tribunal. Such a statement of the law might. excuse every deviation from the master's orders, and substitute a new and very dangerous test of liability. In the case of *Rounds*, we have already had occasion to say, the rule is stated with all the precision and accuracy which is possible from the nature of the case, and we need only to follow its guidance to reach a satisfactory result.

The injury here complained of arose from the act of the defendant's servants in charge of his ferry boat, running across

the river between Hudson and Athens, and transporting passengers and freight between those two points, in stopping, midriver, to land a passenger upon a canal boat forming part of a tow on its way to Albany. A collision arose, as a consequence of which the plaintiff's intestate, who was on board of the canal boat, was thrown into the river and drowned. We must assume, for our present purpose, that there was enough in the facts of the occurrence to raise a question of negligence for the consideration of the jury, since that was conceded by the General Term, and we think was warranted by the circumstances attending the transaction, but while we proceed upon that assumption, nothing which we may find it necessary to say must be construed into any expression of opinion upon the fact. To determine that will be the sole duty of the jury. The passenger landed upon the tow came on board at Athens by the invitation of the pilot, who transferred him to the canal boat as a matter of favor, and apparently without compensation. In doing this, the ferry boat deviated from its usual track or route across the river. Similar acts had been occasionally done before, though without the knowledge or express authority of the master.

It is now argued on behalf of the respondent that the persons in charge of the boat were not acting, when the collision occurred, in the master's business, or within the scope of their employment, but in the execution of an independent purpose of their own, not connected with the master's business, and for the results of which they only were responsible. We do not concur in this view of the transaction. At the most it appears to us a case where the servant, while acting in the master's business, and within the scope of his employment, deviated from the line of duty to his master and disobeyed his instructions.

When this ferry boat left the dock at Athens it started for its terminus at Hudson. It took freight and passengers to transfer across the river. Servants and boat, as the latter moved out into the river, were doing the master's business and acting both in the line of duty and of employment. There was

a usual track or route by which the boat crossed. It may even have been selected and dictated by the owner. In deviating from it the servants might disregard the instructions of the master, but they were none the less engaged in the master's business of transporting passengers from Athens to Hudson because they did not follow the usual route, or pursued another or even a forbidden track. They were still doing their employer's work, though in a manner contrary to his instructions. If they stopped the boat in the middle of the river they did not cease to be engaged in the master's business. Even if the motive was some purpose of their own, they were still about their usual employment, although pursuing it in a way and manner to subserve also such purpose. When they took this passenger to the tow, and in so doing deviated from the usual route, and stopped the boat mid-river for that reason, they were still engaged in the master's business of transporting freight and passengers across the river. They were doing it in a mode and manner perhaps not authorized, and possibly, in some sense, to effect a purpose of their own, but none the less acting within the scope of their employment and engaged in the master's business. In *Joel* v. *Morison* (6 Carr. & P. 501), it was held that if a servant driving his master's cart, on his master's business, make a detour from his regular and usual route for some purpose of his own, his master will be liable for damages resulting from an injury occasioned by the careless driving of the servant while out of his road. In *Sleath* v. *Wilson* (9 Carr. & P. 607) it was said that whenever the master has intrusted the servant with the control of his carriage, it is no answer that the servant acted improperly with it, and, therefore, where the servant, having set his master down, was directed to put up at a particular place and went out of his way to deliver a parcel of his own, and in so doing injured a third person, it was held that the master was liable. The latter of these cases was cited with approval in *Phil. & Read. R. R. Co.* v. *Derby* (14 How. [U. S.] 486), and the question was said to be, in all such cases, not whether the servant was obeying or disobeying the master's

orders, but whether he was acting in the course of his employ-
ment, or, in other words, whether he was or was not at the
time in the relation of servant to the defendant. These cases
are useful to illustrate the idea that there may be a deviation
from the servant's duty in his employment, and that, too, for
some purpose or from some motive of his own, without his
ceasing to be an actor within the scope of his employment and
in the range of his master's business; but yet our own decisions
must be the final and controlling authority, so far as they have
application, though none of them are quite like the present
case in their facts. They all, however, agree in the one im-
portant respect, that a violation of the master's instructions, or
a departure from the strict line of duty due to him from the
servant does not necessarily make the latter alone liable. The
case is put, by the appellant, mainly on the ground that the
officers of the ferry-boat, in transferring the passenger to the
canal boat, were simply doing the latter a personal favor, and
so carrying out a separate and independent purpose of their
own. That is not, in all respects, a correct view of the trans-
action. The passenger appears to have been an entire stranger.
There was no individual or personal motive to induce the pilot
to invite him on board or promise to land him at the tow;
what operated to lead to the act was plainly a motive con-
nected with the master's business. The ferry boat, in previous
years, had done a very considerable business in towing to
Athens or Hudson, boats taken from the tows, or placing them
in, for which services compensation was paid. The defendant
finally built or procured a separate boat to be used in that
business. The canal boats arriving in tows were more or less
his customers, and their captains or owners were naturally to
be treated with consideration as a matter of business.
When the pilot saw this boatman standing on the dock,
and anxious to reach his tow, the pilot did what he
thought the master would very probably have done, if present,
promised to put the boatman on the tow. In doing so he had
no individual or personal purpose of his own, separate from
his master's business and interest. On the contrary it must

have been that business and interest, a disposition to gain and keep the good-will of the boatmen as a class, from among whom came the master's customers, which prompted the invitation and the act. The facts disclose no other possible motive, certainly none which was personal to the pilot and entirely independent of his master's business. Even if unwisely or mistakenly done the act was done by the pilot in the interest and for the supposed benefit of the master. Whatever of good-will or good disposition was likely to flow from this and similar acts of favor to the boatmen would redound, not so much to the personal benefit of the pilot, but to the ferry boat and its owner. Unless this motive influenced the act it is unexplainable except upon the idea of general good-nature and disposition to accommodate. But even that was in the master's business, and amounted only to a disposition to conduct it as far as possible so as to please and favor all kinds of passengers. It is difficult, therefore, to trace in the action of the pilot any separate and independent purpose, disconnected from the master's business. What he did was in the natural line of his employment, might well have been regarded by him as a duty due to his master, and an act which would benefit rather than injure his business. It was an act within the general scope of that employment; it was the transportation of a passenger; if not across the river, at least, partly across; and none the less so because no compensation or fare was demanded. To hold that in this trip across the river, the officers of the boat were acting as the owner's servants and in his business only at the beginning and end of the passage, and not in the middle because stopping to put a passenger on a tow instead of taking him across to Hudson, seems to us an unwarranted conclusion. The motive which prompted the act, and the purpose sought by it, if originating with the pilot and in some sense personal to him, were, at least, not independent or outside of his employment, or disconnected with the master's business. Indeed, it is not difficult to see that, in the absence of an express prohibition which was not proved in the case, the act was plainly and fairly within the discretion, which, as was said in the

*Rounds Case,* the master impliedly must be held to have conferred upon the servant intrusted with the use of his property and the management of the business for which it was provided. The servant did only what the master might naturally have done in the transaction of his own business if he had been personally present, and actively in command. We think, therefore, the master was responsible for the negligence of his servants in charge of the boat, if such negligence existed.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except MILLER, J., not voting.

Judgment reversed.