Williams, J.
In support of the demurrer to the amended petition, and the action of the courts below in sustaining the same, it is urged:
1. That the defendant owed no duty, either to the plaintiff or the boy Brown (who picked up the torpedo), and was under no obligation to them to keep its road in a safe or suitable condition for their use.
2. That the alleged negligence, of defendant’s servants was not the proximate cause of the plaintiff’s injury; but that the same was caused by the wrongful act of Brown; and
3. That the defendant’s servants, in placing the torpedoes on its track and leaving one there, were not engaged in the performance of any duty devolving upon them under their employment, nor in the furtherance of the defendant’s business.
I. The first ground for the claim of the defendant that the demurrer was properly sustained, more definitely stated is, that between stations and publicOcrossings the defendant *20 has the same exclusive ownership, possession, and control of its tracks and rights-of-way as any other owner has of his property ; and persons going upon the same without permission are trespassers; and those who go upon them by mere license, do so subject to all the risks incident to so hazardous an undertaking ; and in neither case is any obligation or duty imposed by law upon the defendant to provide against the danger of accidents to them; nor is it liable for injuries resulting from the unsafe or dangerous condition of its roadway. That at best the boy Brown, when he picked up tjie torpedo, was' on the defendant’s roadway by mere permission, and took upon himself all the dangers and risks of his act; and the plaintiff is in no better or different position.
Actionable negligence is sometimes defined to be “ the neglect of the use of ordinary care or skill towards a person to whom the defendant owes the duty of observing ordinary care and skill, by which neglect the plaintiff, without contributory negligence on his part, has suffered an injury to his person or property.” Again, it is said, that “ actionable negligence exists only where the one whose act causes the injury, owes to the injured person a duty created either by contract or operation of law, which he has failed to discharge.” It may also be regarded as a general rule that a railway company, between stations and public crossings, has the same exclusive control of »fits roadway as other owners have of their private property, and that, generally, no duty is imposed by law on the owner lto keej3 his premises in a suitable condition for tresspassers or I licensees who enter by permission only; that a “ mere naked license or permission to enter on or pass over an estate will I not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of j accident.”
These general rules are given controlling effect when only the conditions therein stated are present; but must be applied subject to other recognized principles in cases including other material conditions.
j It is apparent that there may be a substantial difference between absolving the owner from the active duty of providing *21 against the clanger of accident to a trespasser upon his premises, or one who enters the same as a mere licensee, and giving him the same immunity when he knowingly places a highly explosive and dangerous instrument or agent in the way that he knows the licensee — a child of tender years — is habitually accustomed to "go, and where an ordinarily prudent person would reasonably expect him to go, and be thereby injured.
An owner may, without protest or objection, permit his premises to be used by the public so long, in the same condition, that his acquiesence in the continuation of such use, until some warning or notice on his part, might reasonably be expected; and if under such circumstances and with knowledge of the same, he should place or leave some new, dangerous structure or instrument in the way so used, and from which he might reasonably apprehend danger of injury to those accustomed to such use, can he claim exoneration from liability in case such injury shall occur, on the ground that the law imposed no duty on him to keep his premises in a safe and suitable condition for trespassers and licensees who enter by permission only ?
This is the practical question here presented, and the answer, as well as the reasons for the same, will appear from an examination of some of the cases referred to by counsel and some not cited by them. Kelley v. Columbus, 41 Ohio St. 263, cited by defendant’s counsel, was a proper case for the application of the general rule contended for by him. It did not appear that Kelley or the public had been accustomed to use the lot in question, nor that the defendant had knowledge of such use, or of its dangerous condition. The whole of the case was, the plaintiff went upon the lot without authority, and fell into an excavation, and he was properly denied recovery. McCauley, J., says: “ If the pavement beyond the limits of the street led to any place where persons might be expected to go for any legitimate purpose, the result would be different.” The case of Pittsburgh, Ft. Wayne & Chicago Ry. Co., v. Bingham, 29 Ohio St. 364, also belongs to this class. The railway company had erected, and for eighteen years maintained, its depot building in the same *22 condition. The plaintiff’s intestate, Bingham, went into it as a place of safety during a violent storm; the storm blew off the roof and killed him. The railway company had no knowledge of the defective or dangerous condition of the roof, if such was its condition, and it could hardly be said that under the facts of that case a person of ordinary prudence would anticipate that the building would be blown down by a violent storm. In the opinion of the court, Boynton, J., says: “ If the company had possessed knowledge, in fact, of the dangerous character or condition of the building, and gave no notice thereof to those it permitted to enter or occupy, other considerations would arise.” Carter v. Columbia & Greenville Railroad Co., 19 S. C. 20, is another of this class of cases. The railroad company had placed a torpedo on its track as a danger signal to guard against collisions, and in accordance with its rules and regulations. The deceased picked it up. It exploded, killing him. The court, deciding that the railroad company was not liable, said: “ The evidence did not show or tend to show that the company knew the torpedo was extraordinarily explosive, or such as to require notice that it was being used, or that it might have anticipated a fatal result from their use : In fine, no evidence except the naked facts that the defendant had placed the torpedo upon its track for a good purpose, and that the deceased, by intermeddling with it for a bad purpose, had brought upon himself the injury which resulted from the explosion.”
The foregoing cases sufficiently illustrate the application of the general rules referred to, while others we now proceed to consider furnish a satisfactory solution of the case under discussion, and distinguish it from those controlled by the general rules mentioned.
In Bellefontaine & Indianapolis Railroad Co. v. Snyder, 18 Ohio St. 399, Mary Snyder, the plaintiff in the action, a child six years of age, while on her way to school, was crossing the railroad track at a point where there was no public highway, “ but where school children and others- were in the daily habit of crossing and re-crossing without objection on the part of the railroad company; ” while standing on the track at this point, *23 a gravel train backed on to her and occassioned the injury complained of. The jury gave her a verdict, and the company prosecuted error to this court. The claim was made in behalf of the company that the girl was a trespasser — where she had no right to be, and by her own act put herself directly in the way of danger, and was therefore not entitled to recover. This court held otherwise; and in the opinion, Welch, J. refers with approval to the leading English case of Lynch v. Nurdin, 1 Q. B. 29, which will be hereafter noticed, and after reviewing many cases, concludes as follows : “ The injury here was, within the ordinary and probable sequence of events, a result of defendant's negligence. It might reasonably have been anticipated. There was danger of its happening, such as an ordinarily careful and prudent person might have apprehended, and would be likely to apprehend, as a possible result of any relaxation of vigilance and care.”
Quite like the foregoing case is Barry v. N. Y. C. & H. R. R. Co., 92 N. Y. 289. This was an action to recover damages for killing a boy ten years of age, who at the time he was killed, was crossing the railroad track where there was no public way, but where the public liad been, without objection on the part of the railroad company, accustomed to pass. In disposing of the objection urged against the right of recovery in such case, because the boy was on the track as a mere licensee, the court say: “ There can be no doubt that the acquiescence of the defendant for so long a time, in the crossing of the tracks by pedestrians, amounted to a license and permission, by defendant, to all persons to cross the tracks at this point. These circumstances imposed a duty upon the defendant in respect to persons using the crossing, to exercise reasonable care in the movement of its trains. * * * So long as it permitted the public use, it was chargeable with knowledge of the danger to human life from operating its trains at that point, and was bound to such reasonable precaution in their management, as ordinary prudence dictated, to protect wayfarers from injury. * * * The ground of liability in this case is negligence, and the duty of the defendant to exercise reasonable care, existed irrespective of the fact whether *24 the plaintiff’s intestate had a fixed legal right to cross the track, or was there simply by the defendant’s implied permission. * * * The circumstances known to the defendant required this, whether the plaintiff’s intestate was there by right or by a mere license.”
It is said, however, that the negligence in each of the cases just referred to, was active negligence, or negligence by commission, and not merely passive negligence, or negligence by omission, and they are therefore distinguishable from the case under consideration.
It may frequently be the case that omissions are slighter degrees of negligence, and their connection with the injury not so clear or direct as acts of commission; but quite the contrary may be, and sometimes is, true. If the neglect be the proximate cause of the injury, it is of no consequence whether it be omission or commission. Some well considered cases expressly discard the distinction, while others wholly ignore it; among the former is Davis v. Chicago & Northwestern Railway Co., 58 Wis. 646. It was there held, if the public, with the knowledge and acquiescence of a railroad company, have been long accustomed to walk upon its track, that amounts to a license, although it is a statutory offence to walk upon a railroad track; and that the company was liable to one who, while so walking, was injured by the negligent act or omission of its servants. The negligence complained of in that case consisted in leaving on the defendant’s track, unattended, an engine fired up, with water in the boiler, which exploded and injured the plaintiff, who was at the time walking on the defendant’s track. It appeared that for many years the public had been accustomed to pass along this part of the defendant’s roadway, to the knowledge of the defendant, and without objection from it. It was insisted in behalf of the company, that as to persons on its premises as mere licensees for their own purposes or convenience, it owed no duty of active care or watchfulness to protect them from injury ; and that it was not liable for an injury resulting from omission merely; that while it might be liable for an injury directly caused by the negligent performance of an act, it was *25 not liable for tbe negligent omission to do an act wbicb results in injury to the same person. After reviewing many English and American cases, tbe court disposes of tbe question as follows : “ Tbe cases do not sustain tbe claim tbat a railroad company owes no duty to care for tbe lives and limbs of those whom it permits to occupy its rigbt-of-way for tbe purposes of passage, and can only be held responsible for their willful injury, or for injury wbicb is tbe result of gross negligence on tbe part of its servants; nor do they sanction tbe theory tbat although tbe company in such case may be liable when tbe injury is tbe direct result of tbe negligent act of commission, it will not be liable where tbe injury is tbe result of tbe negligent omission of an act wbicb in tbe exercise of due care tbe defendant ought to perform.”
In Bransom v. Labrot, 81 Ky. 638, tbe negligence complained of, like tbat in this case, consisted in leaving tbe dangerous structure on premises, over wbicb tbe public was accustomed to pass without objection, and tbat, it was there held, constituted gross negligence. Tbe action was brought by Bransom, as administrator of his son, under a statute of Kentucky wbicb provided that, “ if tbe life of any person is lost or destroyed by tbe willful neglect of another person or persons, their agents or servants, tbe widow, heir or personal representative, shall have tbe right to sue and recover damages for tbe loss or destruction of tbe life aforesaid.” The petition, to which a general demurrer was sustained by tbe lower court, stated in substance tbat tbe defendants, being the owners of certain lumber, caused the same to be piled up on an uninclosed lot in their possession in tbe city of Frankfort. Tbat tbe lumber was, by tbe gross and willful neglect of tbe defendants, so negligently piled up as to be dangerous. Tbat for many years tbe public bad been permitted to cross over tbe lot, and children were in tbe habit of playing on tbe same; all of wbicb tbe defendants knew; and while tbe plaintiff’s son was so upon tbe lot, part of tbe lumber fell upon and killed him. In tbe course of an extended opinion tbe court, among other things, say: “As a general rule, tbe owner of land may retain to himself tbe sole and exclusive use and occupation of *26 it. But its individual use and enjoyment are subject to conditions and restrictions imposed for tbe public good, and from a reasonable and humane regard for the welfare and rights of others. Hence, a party may be made liable for the negligent use of his property whereby the person or property of another has been injured. It is held that a party is guilty of negligence in leaving anything in a public place where he knows it to be probable that some other person will unjustifiably set it in motion to the injury of a third person. 1 Addison on Torts, 511.
“ It is a reasonable and necessary rule, that a higher degree of care should be exercised toward a child incapable of using discretion commensurate with the perils of his situation, than one of mature age and capacity. Hence, conduct which towards the general public might be up to the standard of due care, may be gross or wilful negligence when considered in reference to children of tender age and immature experience. While, therefore, the owner of lands is not bound to provide against remote or improbable injuries to children trespassing thereon, there is a class of cases which hold owners liable for injuries to children, although trespassing at the time, when from the peculiar nature and open and exposed position of the dangerous defect or agent, the owner should reasonably anticipate such injury to flow therefrom, as actually happened. In such case the question of negligence is for the jury. 1 Thompson on Negligence, 304, 305. In this case, the lumber pile was placed upon an open and unfenced lot, that children had for years been in the habit of resorting to without objection or warning, and to which, before the timber was placed there, they could resort with safety. It was, therefore, the duty of the defendants in placing their timber upon the lot, to do so in such manner as to make it reasonably safe and secure against injury to children coming there, and, as according to the statements of the petition they failed to do so, a prima facie case is made, and the court erred in sustaining the demurrer.”
A recent case, decided by the supreme court of Michigan, is quite like the one under discussion, both in the character of *27 the negligence and the relation of the parties. A boy, eight years of age, wandered on the defendant’s lands, and into a shed there situate. In the shed was a box partly uncovered, in which were small tin boxes containing a powerful and sensitive explosive substance. These tin boxes were called exploders, and were used to explode dynamite in blowing up stumps. They were liable to explode by striking them with any hard substance. The box containing them was marked “ powder,” but the boy could not read. He took one out of the box, struck it with a stone, thus exploding it, whereby he was injured, and for this injury he sued. The negligence charged against the defendant was “ the keeping of the exploders thus exposed, and in dangerous proximity to where persons were accustomed to pass, and where children, like the plaintiff, without knowledge of the great peril to which they were exposed, might go to the open box and handle them.” The defendant successfully maintained in the circuit court, that the, boy was- a trespasser in going in or near the shed, or at best was a mere licensee, and that the defendant owed him no duty.
Judge Cooley, in the opinion reversing the circuit court, says:
“ The moving about of the children upon the land where they were at liberty to go, while they were not actually employed, was as much an incident to their being there, as is the loitering or playing of children outside the traveled part of the highway, as they go upon it to school or upon errands. Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution toward them, must calculate upon this, and take precautions accordingly. If they have exposed to the observation of children anything which would be tempting to them, and which they, in their immature judgment, might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken. In this case a shed, in which a dangerous explosive was stored, was left only partly inclosed, and its structure and location were such as naturally to invite the entrance of children, *28 either to play or for shelter from, sun or rain; children were rightfully near it; there was nothing in its appearance to warn them off; it was not fastened against their entrance; and there was nothing about it to indicate that.they would do injury, or be injured by going there. The box containing the explosives seems to have had more the appearance of a box discarded as of no value and with worthless refuse in it, than a box which it was of the very highest importance should be guarded with sedulous care. It was never firmly fastened, and the only warning upon it was a word written on the top board, which was not always kept on. A man of ordinary prudence, if told that so dangerous an article was so carelessly stored, might well have deemed the statement incredible. We can not, under these circumstances, say that the plaintiff’s father was chargeable with fault in not suspecting the danger, and warning his children away from it; or that the child was blameworthy in acting upon the childish instincts and propensities which combined with the negligence of defendant’s servants to bring the danger upon him. A new trial must be ordered.” Powers v. Harlow, 53 Mich. 507.
The remarks of Judge Cooley apply in all their breadth and force to this case. If it be said that Powers v. Harlow, falls within that class of cases in which an invitation to go upon the premises was implied, from the fact that there was an allurement or inducement to do so, by reason of the attraction they afforded, the same may with equal, if not greater propriety, be said in this case, if the averments of plaintiff’s amended petition be accepted. The railroad track of the defendant, so open and exposed as to be subject to the habitual and daily use of the public, including children, to the knowledge of the defendant, and with its permission, was quite as inviting to children, and likely to- tempt them to wander and play upon it, as a partly inclosed shed; and a torpedo lying exposed upon the track, is no less attractive to them than one in a partially covered box.
It will be found by an examination of the cases in which consideration is given to this subject, that there is in reality no invitation; and it is implied from slight circumstances, *29 generally from the fact that children, following their inclinations, go upon and into exposed and frequented objects and places. In certain cases, known as “ turntable cases,” arising where railroad companies had left on uninclosed grounds, turntables unlocked or otherwise unsecured against being revolved, and children wandered onto them and were injured, it is said, the children had an implied invitation to go upon them, because their being attracted to them might have been reasonably expected.
In Keefe v. Milwaukee & St. Paul Ry. Co., 21 Minn. 207, where a railway turntable, which was attractive but dangerous to children, was left exposed and unfastened in a public place, and many children were in the habit of going there to play, it was held that the railway company was liable for an injury done by the turntable while being moved by other children, to a child seven years old, and the fact that the child was a trespasser, did not relieve such company.
To the same effect is Nagel v. The Missouri Pacific Ry. Co., 75 Mo. 653; Railroad Company v. Stout, 17 Wall. 657, and many other cases.
Indeed, the “ invitation ” is implied from user alone. Thus, in Graves v. Thomas, 95 Ind. 361, it is held that where the owner of a city lot, has for years suffered the public to cross it on foot, it is his duty on making an excavation in the path for a building, to place a guard or warning, and he is liable to one who, in endeavoring to pass, is injured by reason of the absence thereof.
And in Campbell v. Boyd, 88 N. C. 129, the court say: “It (the way) has in fact been thus used, and known to the defendant to be thus used, with his acquiescence, and under these circumstances it may be assumed to be an invitation to all who have occasion thus to use it.”
And the observations of the court in Davis v. Chicago & Northwestern Ry. Co., supra, are pertinent also to this subject: “ In a case like the present, where the company knew that its right-of-way was constantly used, with its acquiescence, by the public as a foot-way, its servants are charged with notice that it will be so used, and they cannot without fault proceed *30 in a manner which must necessarily be dangerous to the persons so using the same. After permitting the public to use its road, they cannot run their road without any regard to the fact that the public are so using it.”
The decision in Corby v. Hill, 4 C. B. (N. S.) 556. is said to be placed upon the ground of an -implied invitation. And it is noteworthy, that Willes, J., suggesting the necessary averments in a declaration in such cases, wholly omits any mention of an invitation implied or otherwise. The facts essential to a good declaration, he says, are : “ That the plaintiff had license to go on the (private) road; that he was in consequence accustomed to, and likely to pass along it; that the defendant knew of that custom and probability; that the defendant negligently placed slates in such manner as to be likely to prove dangerous to persons driving along the road, and that plaintiff drove along the road and was injured.”
In the late case of Heaven v. Pender, 11 Q. B. D. 503, it is said that a more accurate and satisfactory ground of recovery, embracing all cases of implied invitation, is to be found in the proposition, that whenever one person. is by circumstances placed in such a position with regard to another, that every one of ordinary prudence would recognize, that if he did not use ordinary care and skill in his own conduct with regard to these circumstances, he might cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger.
However this may be, the phrase “ implied invitation ” in its real value and significance, as derived from its application in the adjudged cases, imports knowledge by the defendant of the probable use by the plaintiff of the defendant's property, so situated and conditioned as to be open to, and likely to be subjected to such use; and it may be concluded that, while mere permission is not invitation, it may be implied, from acquiescence by the owner in the accustomed use of his property by the public, so long in the same condition, that it might reasonably be expected such use would be allowed by him to continue; or when he knowingly so exposes and leaves it to the use of children, without objection, that they following *31 their natural impulses would be likely to go upon it; and in either case it is his duty to use such care, commensurate with the danger arising from such use, as an ordinarily prudent person would under the circumstances. Hence, where a railroad company has for a long time permitted the public, including children, to travel and pass habitually over its road, at a given point, without objection or hindrance, it should in the operation of its trains, and management of its road, so long as it acquiesces in such use, be held to anticipate the continuance thereof; and is bound to exercise care accordingly, having due regard to such probable use, and proportioned to the probable danger to persons so using its road; and it is negligence for the servants of suoli company to knowingly interpose any new danger without reasonable precaution against injury therefrom.
It is. therefore unimportant whether the defendant’s liability, so far as this question of negligence is concerned, be placed upon the ground of implied invitation, or be referred to that other and, as it is said, more satisfactory and accurate statement of the rule announced in Heaven v. Pender, supra. Tested by either, the defendant, knowing of the probable use of its roadway by children, from the previous habitual use thereof by the public, long acquiesced in by the defendant, ought reasonably to have anticipated such use by the plaintiff and other children; and its servants, in placing and leaving the unexploded torpedo, an innocent looking, but highly dangerous and destructive article, where they might reasonably anticipate plaintiff and other children would be likely to go and handle it, and be injured, thus placing a new and hidden danger in their way, without notice or warning— failed to use such care as a person of ordinary prudence would and ought under the circumstances.
If it be conceded, as the defendant claims, that the boy Brown was a wrong-doer in going upon its track and there picking up the torpedo, and could not for that reason recover for any injury done him, it by no means follows that the plaintiff is in no better situation, and is likewise precluded.
It is not to be inferred from the amended petition, that the plaintiff was on the railroad track at the time the torpedo was *32 left there, or when Brown picked it up, or when it exploded causing the injury. It does not appear that the plaintiff was in fault, or where he might not lawfully be. Admitting Brown was on the track without right — was even a voluntary wrongdoer when he picked up the torpedo; it was so picked up by reason of its having been left exposed by defendant’s negligence, and where the defendant might reasonably have anticipated it would be found and handled. It was exploded as a consetquence of its being so found, by an irresponsible agent; at least one ignorant of the peril, or incapable of comprehending its presence or imminence, or exercising care; and the plaintiff was merely attracted by curiosity to Brown who took the torpedo off the track. It can hardly be said that any fault or neglect can be imputed to plaintiff; and is the defendant any the less liable to him because the wrong of Brown combined with the defendant’s negligence to cause the injury he has * suffered? "We apprehend not. Lane v. Atlantic Works, 111 Mass. 136.
II. Having seen that the facts stated in the amended petition are sufficient to make a case of negligence on the part of the defendant’s servants, the next question is, was that negligence the proximate cause of the plaintiff’s injury? The claim is that the causal connection between the injury and the negligent act, is broken by the intervention of the boy Brown; and that his wrongful or careless act was the immediate cause of the injury to plaintiff. This does not seem to be much insisted upon. And, indeed, since the leading case of Lynch v. Nurdin, 1 Q. B. 29, there is an almost unbroken line of authorities to the effect that such intervening cause cannot affect the liability of the negligent party. This will be seen by a brief reference to some of the decided cases.
In Lynch v. Nurdin, supra, the defendant’s servant left his cart and horse half an hour in the open street at the door of the house, in which the servant remained during that period. The plaintiff, a child between six and seven years, and several other children, came up and began to play with the horse, and climb into the cart and out of it. While the plaintiff was getting down from it, another boy made the horse move, in *33 consequence of which the plaintiff fell, and the cart passed over his leg, breaking it.' The plaintiff had a verdict. Lord Denman, C. J., in sustaining the verdict, says: “ It is urged that the mischief was not produced by the mere negligence of the servant, but at most by that negligence in combination with two other active causes, the advance of the horse in consequence of his being excited by the other boy, and the plaintiff’s improper conduct in mounting the cart, and so committing a trespass on the defendant’s chattel. On the former of these two causes no great stress was laid, and I do not apprehend that it can be necessary to dwell upon it at any length; for if *1 am guilty of negligence in leaving anything dangerous in a place where I know it to be extremely probable that some other person will unjustifiably set it in motion, to the injury of a third person, and if that injury should be so brought about, I presume that the sufferer might have redress by action against both, or either of the two,, but unquestionably against the first.” And this case also decides that the defendant was liable, although his negligence was omission, and not commission, consisting in merely leaving the horse and cart unattended; and although the plaintiff, when injured, was a trespasser thereon. Speaking on these subjects, the court say: “If large parties of young children might reasonably be expected to resort to the spot, it would be hard to say that a case of gross negligence was not fully established;” and again: “ Supposing the fact to be ascertained that the plaintiff merely indulged the natural instincts of a child in amusing himself with the empty cart and deserted horse, though a trespasser, the defendant cannot be permitted to avail himself of that fact.”
In Illdge v. Goodwin, 5 C. & P. 192, the defendant’s horse and cart were left standing in the street, without any one attending them. A person came along and whipped the horse, which caused it to back the cart against the plaintiff’s window. It was urged that the man who whipped the horse, and not the defendant, was liable. It was also contended that the bad management of the plaintiff’s shop man had contributed to the injury. But Tindal, C. J., ruled that even if this were *34 believed, it would not avail as a defense. “ If,” he says, “ a man chooses to leave a cart standing on the street, he will take the risk of any mischief that may be done.”
Clark v. Chambers, 3 Q. B. Div. 327, is another case directly in-point on this question. The defendant, who was in the occupation of certain premises abutting on a private way, consisting of a carriage-road and foot-way, had erected a barrier across the carriage-way. Some persons, without defendant’s authority, removed a part of the barrier from the carriage-way, and placed it across the foot-path. The plaintiff on a dark night, while passing upon the foot-path, ran against the barrier and was injured. In holding that the defendant was liable, notwithstanding the fact that the immediate cause of the accident was the intervening act of the third party in removing the barrier to the foot-path from the carriage-way, Lord Cockburn observed: “ On the part of the plaintiff it was contended that as the act of the defendant in placing a dangerous instrument in the road had been the primary cause of the evil, by affording the occasion for its being removed and placed on the foot-path, and so causing the injury to the plaintiff, he was responsible in law for the consequences.” Numerous authorities were cited in support of this position. And after referring with approval- to Lynch v. Nurdin, supra, and Illidge v. Goodwin, supra, and- many other cases, Lord Cockburn concludes : “It appears to us that a man who leaves, in a public place along which persons, and amongst them children, have to pass, a dangerous machine which may be fatal to any one- who touches it, and without precaution against mischief, is not only guilty of negligence, but of negligence of a very reprehensible character, and not the less so because the imprudent and unauthorized act of another, may be necessary to realize the mischief, to which the negligence of the defendant has given occasion.”
Lynch v. Nurdin has been generally followed in this country. We deem it unnecessary, however, to refer to any of the American cases except Pastene v. Adams, 49 Cal. 87, and Lane v. Atlantic Works, 111 Mass. 136. In the former the defendants had negligently piled lumber and left it in an *35 unsafe condition. Plaintiff was standing near it, and another person negligently drove against it, causing it to fall on plaintiff, whereby he was injured. It was contended that the defendant’s negligence was only the remote, while the driver’s was the immediate, cause of the injury, and therefore the defendant was not liable. But it was held by the court, that “ if the timbers were negligently piled by defendants, the negligence continued until they were thrown down, and (concurring with the action of the driver) was a direct and proximate cause of the injury sustained by plaintiff.”
In the latter case, Lane v. Atlantic Works, the defendant carlessly left a truck loaded with iron on a public street in Boston. The iron was so negligently placed on the truck that it would’easily fall off. The plaintiff, a boy seven years old, was walking along the street, when he was called by another boy twelve years old, to come over and see him move the truck. The plaintiff went over and stood near the truck while the other boy was attempting to move it. In consequence of the motion thus given the truck by the other boy, the iron rolled off and injured the plaintiff’s legs. Colt, J., in the opinion of the court disposes of the question now under consideration as follows: “ In actions of this description the defendant is liable for the natural and probable consequences of his negligent act or omission. The injury must be the direct result of the misconduct charged. But it will not be considered too remote, if according to the usual experience of mankind the result ought to have been apprehended. The act of a third person intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrong-doer, if such act ought to have been' foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise.” In that case it was held immaterial whether the act of the boy in moving the truck and thus causing the iron to fall upon the plaintiff, was mere negligence or voluntary wrong-doing.
*36 And see Nagel v. The Missouri Pacific Ry. Co., supra; Binford v. Johnston, 82 Ind. 426; Wharton Neg., sec. 85.
In this case the plaintiff, when injured, was free from fault, and where he might lawfully be. He was not instrumental, in any way, in bringing about the disaster, nor chargeable with Brown’s conduct or agency therein. The defendant, by its negligent act and omission, in placing and leaving the torpedo where it was found and picked up by Brown, rendered the plaintiff’s injury possible and probable; and the danger of injuries resulting from some one picking up and handling an instrument of the kind described in plaintiff’s amended petition, left upon the defendant’s track, at the place and under the circumstances therein stated, would have been reasonably anticipated by a person of ordinary care and prudence.
The act of Brown, therefore, was but a contributing condition, which defendant’s servants ought to have anticipated as a probable consequence of their negligent act or omission, while their negligence remained thé culpable and direct cause of the injury suffered by plaintiff.
III. It remains to be considered whether, from the statements of the. amended petition, the acts and conduct of the defendant’s agents and servants, constituting the negligence therein charged, were so within the scope of their employment as to make the defendant liable for the injuries thereby done to the plaintiff. It is claimed they were not, because it is alleged that the torpedoes were wantonly placed upon the defendant’s track by its servants, when and where there was no necessity or occasion for their use. It appears from the pleading “ that the defendant in using and operating its road and trains” carried these torpedoes on its trains to be used by its servants in the management and operation of its trains; that the defendant’s servants then engaged in the management of one of defendant’s trains having torpedoes upon it, took these torpedoes from the train, and while so in the control and management of the train, wantonly placed them on the track. “That defendant so carelessly and negligently conducted itself in the management of its said train of cars, that it carelessly failed to explode and destroy all of the torpedoes, *37 but negligently left one exposed and unexploded on its track,” etc.
The railroad company having intrusted to its servants the control and management of its train of cars, and the custody of these dangerous explosive articles, to be used by them on its road, in the operation and management of the train, necessarily confided to some extent, in the judgment and discretion of the servants in their use. The authority to the servants was to use the torpedoes on the road in the management of the train. The real ground for claiming that the defendant is not liable, is that they were used at a time and in a manner not within their instructions or authority. But the defendant must be held to have taken upon itself the risk of errors of judgment on the part of the servants, and of mistakes, in the exercise of the discretion confided to them; and to be liable for their misjudgment and abuse of discretion in the use of them.
Nor does the fact that the conduct of the servants, constituting the negligence complained of, was a violation of their duty to the defendant, or was needless, reckless or wanton, exonerate the defendant. A master does not ordinarly authorize or expect negligence in the servant. Eeasonable care and fidelity in his employment, is a part of the servant’s engagement ; and every act of negligence on his part is in some sense a violation of his duty to the master and a deviation from his authority.
The case of Hoffman v. The N. Y. C. & H. R. R. Co., 87 N. Y. 25, so accords with our views on this subject, that we forbear any extended review of the numerous other cases sustaining them.
In that case the plaintiff, a boy eight years of age, jumped on the steps of a car in a passenger train upon the defendant’s road, and sat down upon the platform of the car. He was kicked from the car by the conductor, or a' brakeman, while the train was running at a speed of about ten miles an hour and was injured. By the regulations of the defendant, in force at the time, the conductor had charge of the train and was responsible for its safe and proper management; and *38 brakemen and other servants thereon were subject to his orders. He was authorized to remove from the cars persons who should refuse to pay their fare or were drunk, riotous or unruly; but must be governed by the provisions of the law in so doing. The law then in force provided that “ if any passenger shall refuse to pay his fare, it shall be lawful for the conductor to put him and his baggage out of the car, using no unnecessary force, at any usual stopping place or near any dwellings, on stopping the train.”
It was held that the.defendant was liable, and in the opinion of the court, Andrews, C. J., says: “ Assuming the case made by the plaintiff, the act (of kicking him from the car) was flagrant,- reckless and illegal; but the point is, was it within the scope of the employment? The removal of trespassers from the cars was, as we hold, within the implied authority of the defendant’s servants on its train. The fact that they acted illegally in removing the plaintiff while the train was in motion, does not exonerate the defendant. * * No doubt the kicking of the boy off the car was not only a wrong to the plaintiff, but was a violation of the duty which the train servants owed to the defendant, to exercise proper care in executing the authority confided to them; but in most cases where the master has been held liable for the acts of the servant, the tortious act was a breach of the servant’s duty. In this case authority to remove the plaintiff from the cars was vested in the defendant’s servants. The wrong consisted in the time and mode of exercising it. For this the defendant is responsible, unless the brakeman used his authority ’as a mere cover for accomplishing an independent and wrongful purpose of his own.”
So it may be said in this case, that at most it appears that the defendant’s servants, while acting in its business and within the scope of their employment, deviated from the line of their duty to the defendant and disobeyed its instructions. Nevertheless, while so deviating and disregarding their instructions, they were still doing their employer’s work, though not according to their instructions. And see Quinn v. Power, 87 N. Y. 535.
*39 We are therefore of opinion that the plaintiff’s amended petition states a cause of action, and that the demurrer should have been overruled.

The judgments of the district and common pleas courts are reversed, and the cause remanded to the common pleas court, with instructions to overrule the demurrer, and for further proceedings.