CHARLES CAMPBELL, Respondent, v. ARTHUR L. D. WARNER, Appellant.

*Motor vehicles — action for injuries received when struck by defendant's automobile — whether chauffeur engaged in master's business at time of accident — judgment for plaintiff affirmed.*

Appeal from a judgment of the Supreme Court, entered in the New York county clerk's office on June 8, 1921, upon the verdict of a jury for $10,000 in an action for damages for negligence, and also from an order entered on May 23, 1921, denying a motion for a new trial.

Judgment and order affirmed, with costs. No opinion. Present — Clarke, P. J., Laughlin, Smith, Merrell and Greenbaum, JJ.; Clarke, P. J., and Greenbaum, J., dissenting.

CLARKE, P. J. (dissenting): On the question of the amount of the verdict, the negligence of the defendant's chauffeur and the contributory negligence of the

plaintiff, questions of fact were presented, and, in my opinion, on those matters the evidence sustains the verdict. The responsibility of the defendant, however, for his chauffeur's negligence depends upon whether the chauffeur at the time of the accident was engaged in his master's business. The defendant resided at 205 West Eighty-ninth street, which was on the northeast corner of Eighty-ninth street and Broadway. The car was kept at the Broadway Garage at Broadway and Eighty-fourth street, five blocks from his house. With his wife he had been out in the afternoon and returned at about five-thirty. He said to his chauffeur: "Dan, return at nine-thirty to meet a train at Grand Central." The chauffeur came back to the house at nine or nine-thirty. In the meantime the accident had happened at a little before seven o'clock. The defendant knew nothing of it until the next morning. The chauffeur told him nothing about it that night. After leaving his employer at his house and receiving orders to return at nine-thirty, Healy, the chauffeur, went through Eighty-ninth street to Amsterdam avenue, down to Eighty-sixth street and across the transverse road through Central Park, came out at Eighty-fifth street and proceeded along Eighty-fifth street to Avenue A, to Eighty-second street and stopped at his house and had his supper. After his supper he drove the car down First avenue to Twenty-sixth street and went to the Bellevue Hospital. He was formerly a driver of ambulances for the hospital. He said that he had a cold and went down there to get some cough medicine; that the drug store at the hospital was closed; that he went from the drug store to the hospital garage and met one of the drivers, that he explained his case to him, that his friend said he had a little of the cough mixture and he would let Healy have it and that he put the mixture in his pocket to use when he got home. Healy was corroborated in this by the witness Murphy who said Healy came over about half past six and got this cough medicine. Healy further testified that he left Bellevue Hospital, drove up First avenue to Thirty-fourth street, to Eighth avenue and that when he got to Fifty-fourth street the accident happened. It seems to me that the chauffeur was then on an expedition entirely for his own purposes. I fail to see how it is possible to hold that he was on his master's business at the time. The learned trial justice stated, upon a motion to set aside the verdict: "I have very grave apprehensions that I shall have to grant that motion," but after taking briefs and the minutes finally denied the motion. The latest reported case in the Court of Appeals on this vexed question is *Riley* v. *Standard Oil Co.* (231 N. Y. 301). In that case the prevailing opinion was written by Judge Andrews with a very strong dissent by Judge McLaughlin, Chief Judge Hiscock and Judge Chase concurring with him. Andrews, J., states the case thus: "Driving directly towards his master's mill; his master's truck loaded with his master's goods for which his master had sent him; his only purpose to deliver them as his master had commanded; with no independent object of his own in mind; Million, a chauffeur employed by the defendant, ran over the plaintiff, negligently, as the jury have said, with some evidence to support their finding. Therefore, the complaint should not have been dismissed unless we can say as a matter of law that at the moment of the accident this chauffeur was not engaged in the defendant's business. We reach no such conclusion." He further says: "A master is liable for the result of a servant's negligence, when the servant is acting in his business; when he still is engaged in the course of his employment. It is not the rule itself but its application that ever causes a doubt. The servant may be

acting for himself. He may be engaged in an independent errand of his own. (*Reilly* v. *Connable*, 214 N. Y. 586.) He may abandon his master's service permanently or temporarily. While still doing his master's work he may be also serving a purpose of his own. (*Quinn* v. *Power*, 87 N. Y. 535.) He may be performing his master's work but in a forbidden manner. (*Cosgrove* v. *Ogden*, 49 N. Y. 255.) Many other conditions may arise. No formula can be stated that will enable us to solve the problem whether at a particular moment a particular servant is engaged in his master's business. We recognize that the precise facts before the court will vary the result. We realize that differences of degree may produce unlike effects. But whatever the facts, the answer depends upon a consideration of what the servant was doing, and why, when, where and how he was doing it." Loyally endeavoring to apply the law as laid down by the Court of Appeals, accepting the rule that circumstances alter cases, exercising the jurisdiction vested by law in this court to review the facts, to the best of my judgment, in this case, under no reasonable hypothesis can this chauffeur be deemed at the time of this accident to have been engaged in the slightest degree in his master's business. It was a couple of hours before he was needed. He had gone on an independent trip entirely for his own purposes. It seems clear that an expedition to obtain cough medicine for himself is as independent of any service for his master as, in *Reilly* v. *Connable*, it was to get a beefsteak upon his wife's request for his lunch. In that case the master was exonerated. At the time of the accident he was a mile or so south of his garage and his master's house. If there be any vitality left in the rule requiring the chauffeur to be on the master's business before the doctrine of *respondeat superior* attaches this judgment cannot stand. In *Riley* v. *Standard Oil Co.*, the setting aside of the verdict was supported but a new trial was ordered under the peculiar circumstances of that case, as the court said it might be found the servant had re-entered, at the time of the accident, his master's business. No such conclusion, it seems to me, can be drawn from the facts in this case unless we are prepared to say, abandoning all pretense as to the *respondeat superior* rule, that the bare ownership of a car makes the owner responsible for whatever happens to a third party growing out of the use of that car. In my opinion this judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

Greenbaum, J., concurs.