## JONES v. WEIGAND.

(Supreme Court, Appellate Division, Second Department. November 19, 1909.)

1. MASTER AND SERVANT (§§ 302, 305*) — INJURIES CAUSED BY SERVANTS — "SCOPE OF HIS EMPLOYMENT."

The test of whether a servant is acting within the "scope of his employment" at the time of his negligent act is, was the act done while the servant was doing the master's work, no matter how irregularly or with what disregard of instructions.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1217, 1221–1225, 1229; Dec. Dig. §§ 302, 305.*

For other definitions, see Words and Phrases, vol. 7, p. 6357.]

2. MASTER AND SERVANT (§ 302*)—INJURIES TO THIRD PERSON—DEVIATION FROM EMPLOYMENT.

A coach driver, after having finished the duties entailed on him of attending a funeral under the direction of an undertaker, started from the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

undertaker's to go to the barn, but took a circuitous route and stopped at a friend's house, and then started directly to the barn, and while doing so negligently ran over a child. *Held*, that the driver's act was done while he was doing the master's work and the master was liable for the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1217–1221, 1225, 1229; Dec. Dig. § 302.*]

Appeal from Trial Term, Queens County.

Action by Francis Jones, an infant, by his guardian ad litem, against John K. Weigand. From a judgment entered after dismissal of the complaint, plaintiff appeals. Reversed.

Argued before WOODWARD, JENKS, BURR, RICH, and MILLER, JJ.

Robert Stewart (Ralph G. Barclay, on the brief), for appellant.

Frederick N. Van Zandt (Frederick B. Maerkle, on the brief), for respondent.

MILLER, J. The plaintiff was struck and run over by a coach owned by the defendant and driven by his employé, and brings this action to recover for the personal injuries thereby sustained. At the close of the evidence the court dismissed the complaint, on the ground that the negligent act of the driver was not done in the course of his employment as such.

The driver had been sent with a coach by his employer to an undertaker for use at a funeral. According to directions, he went to 1134 Manhattan avenue, Kings county, drove a gentleman from there to 320 East Ninetieth street, New York, the house of mourning, from there to Calvary Cemetery in Queens borough, where the interment took place, and from there he returned to 1134 Manhattan avenue, where his engagement terminated. It is undisputed that he had no further duty to perform, except to return the coach to the defendant's stable, which was located in Kings county, on Newell street, between Driggs and Nassau streets, a distance of 16 blocks from 1134 Manhattan avenue by the direct route. In place of returning by the direct route, the driver took a circuitous route, driving back into Queens county and going several blocks out of his way, part of the time in the opposite direction of the stable. He stopped at 133 Greenpoint avenue, Queens county, to call on a lady, and left the team standing by the curb. Upon returning to the coach, he started up the horses, taking no heed of the plaintiff, a little child, who was playing near the step of the coach, with the result that the plaintiff was thrown under the wheel and run over.

The driver was called as a witness by the defendant, and testified that he took the circuitous route to the stable, because he thought it was safer; that by that course he would avoid the streets where the traffic was greatest; that, while the distance was greater, he could make it in as good time; and that in fact it did not occur to him to call on the lady until within a block of her home. The truth of that story was for the jury. While it may have been improbable, it was not incredible as a matter of law. Apparently the witness was friendly to the plaintiff, but he was called by the defendant. Moreover,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

even if the driver's testimony were eliminated, it is doubtful whether the ruling would be sustained. The point is very nice, and the discrimination between some of the cases very fine, though the general rule is well settled.

The master is liable only for acts done by the servant in the course of his employment as such; but mere disregard of instructions or deviation from the line of his duty does not relieve the master of responsibility. Wrongful acts are usually in violation of orders, or in deviation from the strict line of duty. The test is whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions. If the servant, for purposes of his own, departs from the line of his duty, so that for the time being his acts constitute an abandonment of his service, the master is not liable; but, to constitute an abandonment of the service, the servant must be serving his own or some other person's purposes, wholly independent of his master's business. It seems to me that the making of the circuitous route to the stable was at most a deviation, not an abandonment, of the service. While the servant deviated from the direct route, he was nevertheless engaged in taking the coach back to the stable. He combined his own with his master's purposes, but did not wholly abandon his service, except during the time when he was absent from the coach to make his call.

But, if the foregoing be doubtful, it seems plain that, when the driver returned to the coach for the purpose of taking it back to the defendant's stable, he re-entered upon his master's service, and resumed the business which he had temporarily abandoned. It is no answer to this to say that the accident would not have happened if he had not made the call. His carelessness after he had resumed his master's business was the causa causans of the accident. The leading English cases (Joel v. Morison, 6 Carr. & P. 501, and Sleath v. Wilson, 9 Carr. & P. 607) are illustrations of mere deviation from the line of duty, while Mitchell v. Crassweller, 13 C. B. 237, and Storey v. Ashton, L. R. 4 Q. B. 476, were held to be cases of a total abandonment of the service. The cases cited by the respondent are not in point, and it is necessary to note only one or two of them. In Cunningham v. Castle, 127 App. Div. 580, 111 N. Y. Supp. 1057, the defendant's evidence tended to show that the defendant had loaned the automobile to his chauffeur, and that the accident happened while the latter was using it solely for his own purposes. Sheridan v. Charlick, 4 Daly, 338, was decided on the authority of Mitchell v. Crassweller, supra. The evidence in that case tended to show, not deviation merely, but an entire abandonment or departure from the master's business. The coachman was not returning the horses and carriage to the stable, even by a circuitous route, but was using them for purposes of his own. The Massachusetts cases may seem to support the defendant's contention. See McCarthy v. Timmins, 178 Mass. 378, 59 N. E. 1038, 86 Am. St. Rep. 490; Perlstein v. American Express Co., 177 Mass. 530, 59 N. E. 194, 52 L. R. A. 959.

This case, however, may be distinguished from those by the fact that, when the accident occurred, the servant had performed his own purposes and had resumed his duty to return the coach to the stable.

I do not see how the case can be distinguished from Williams v. Koehler & Co., 41 App. Div. 426, 58 N. Y. Supp. 863, a case in this department, decided on the authority of Quinn v. Power, 87 N. Y. 535, 41 Am. Rep. 392, except that that was a much stronger case for the defendant than this.

The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur.