RUCK v. GIMBEL BROS. MARCUS v. SAME. KRISCHANSKY v. SAME.

(Supreme Court, Appellate Term, First Department. May 26, 1916.)

Appeals from Municipal Court, Borough of Manhattan, Second District.

Separate actions by Nathan Ruck, by Samuel Marcus, and by Abraham Krischansky against Gimbel Bros. From judgments for plaintiffs, defendants appeal. Judgments affirmed.

Argued May term, 1916, before GUY, BIJUR, and COHALAN, JJ.

James F. Mahan, of New York City (O. M. Quackenbush, of New York City, of counsel), for appellants.

Mortimer W. Solomon, of New York City, for respondents.

PER CURIAM. Affirmed without opinion.

BIJUR, J. (dissenting). Plaintiffs were riding on a moving van, which was struck by one of defendants' auto trucks, and plaintiffs were injured. On this appeal appellants raise no question as to the sufficiency of the findings in respect of the negligence of the defendants' chauffeur, but do as to the finding that the chauffeur was then engaged in his employers' business.

Defendants conduct a department store at Sixth avenue and Thirty-Third street. At the time of the accident, 11:40 a. m., defendants' chauffeur had completed his route of deliveries on the upper West Side, Seventy-Ninth to Eighty-Sixth streets, and, contrary to the instructions of defendants, was on his way home for lunch on the

lower East Side, near the corner of Suffolk and Houston streets, where the accident occurred. His instructions were, after deliveries, to return with the car to the store or garage.

Defendants offered three witnesses. The chauffeur testified frankly that he had packages for delivery only on the upper West Side, and that he was at the place of the accident a mile or more off his route, for the purpose of going to his own home to take lunch. Defendants' superintendent of deliveries testified to the same effect, and to the instructions given to all chauffeurs, including the one involved in this accident, to return immediately to the store or garage after the deliveries had been completed. The chauffeur's helper also testified that the packages for delivery on the truck were exclusively for the upper West Side.

The learned judge below, in delivering his decision, said:

"In the case of Ferris v. Sterling, 214 N. Y. 249, at page 253 [108 N. E. 406], * * * the court says: 'The proof that the defendant was the owner of the automobile at the time of the accident is prima facie proof that the chauffeur was then engaged in the owner's service.' And they further say that the presumption is not destroyed as a matter of law by the testimony on the part of the defendants, even though his explanation of the use of the car would absolve the owner, if credited. The question of whether it should be credited is one of fact for the jury, and the evidence in this case given by the chauffeur is discredited by the questions that you [counsel for the defendants] asked, that the plaintiff couldn't possibly ask; that is, the question of his discharge, and why he was discharged. * * * I say, he is discredited by his own testimony. In addition to that, he admits that he had goods for the defendants on his truck at that time, return packages, and that question I also resolve that in favor of the plaintiffs. I conclude from the evidence that he was then in the employ and engaged in the master's service."

The testimony to which the judge referred was the following:

"Q. Are you now working for Gimbel Bros.? A. No, sir. Q. Since when have you not been working for Gimbel Bros.? A. The same day it happened. Q. Were you discharged, Mr. Becker? A. Yes, sir. Q. For what reason? A. For not making out a report as soon as I came back to the store. Q. Report of what? A. Of the accident."

It is evident from this review of the evidence that the court below correctly stated the rule of law that the mere ownership of the truck was sufficient prima facie proof that at the time of the accident the chauffeur was engaged in the business of his employers. The testimony of the three witnesses for the defendants was uncontradicted, either directly or indirectly by the circumstances surrounding the occurrence. How the testimony of the chauffeur was discredited by the fact of his discharge for not reporting the accident I am unable to understand. It is not questioned but that it was his duty to report it. The vague and shadowy inference that might suggest itself that this accident occurred while he was engaged in his masters' business because he was discharged for not reporting it could be justified only on the theory that his instructions were that he should report only such accident as in his opinion had occurred while he was engaged in his employers' business—a hypothesis the mere statement of which is sufficient proof of its unsoundness. Moreover, the testimony is that

he was discharged, not because the accident had occurred, but because he had not reported it, an infraction of a manifestly necessary rule, which sheds no light, even upon the defendants' view, as to whether the particular accident was one for which it was responsible or not.

Even assuming, however, that the chauffeur's testimony was in some respect discredited—which I repeat it was not—the testimony of the defendants' manager and of a perfectly disinterested witness no longer in defendants' employ, the chauffeur's helper, who was not even present at the time of the accident, stands absolutely uncontradicted and unaffected in the slightest degree. Finally, if a scintilla of discredit could be found in the record, it would relate solely to the view, namely, the state of mind, of either the chauffeur or the defendants as to whether the former was at the time of the accident actually engaged in the defendants' business. The account of the actual physical facts as they occurred remains established without impeachment, direct or indirect. We have, therefore, a situation where the bare presumption arising from defendants' ownership of the truck is overwhelmingly overcome by the directly uncontradicted and unimpeached testimony of facts which prove that at the time of the accident the servant was not engaged in his masters' business.

There remains, therefore, merely a question of law to be determined. As to this, it appears that, the chauffeur having been instructed to make deliveries of certain of his employers' goods to points from two to three miles almost due north of his employers' establishment, had completed the task assigned to him, and should, pursuant to his instruction and duties, have returned directly to that establishment to deliver return packages and the moneys which he had collected, and there leave the truck. Instead of that he proceeded to a point some two miles south of that establishment to take his lunch, contrary to his instructions, and without the permission, either express or implied, of his employers or of any one on their behalf. On all the authorities this is clearly not a case of "deviation" (see Quinn v. Power, 87 N. Y. 535, 41 Am. Rep. 392; Cosgrove v. Ogden, 49 N. Y. 255, 10 Am. Rep. 361; Jones v. Weigand, 134 App. Div. 644, 119 N. Y. Supp. 441), but constituted an "abandonment" for the time being of his masters' service and his duty thereunder. Geraty v. Nat. Ice Co., 16 App. Div. 174, 44 N. Y. Supp. 659, citing with approval Cavanagh v. Dinsmore, 12 Hun, 465, a case so nearly analogous to the one at bar, even to the point of geographical similarity, as to be worthy of remark.

As therefore, at the time of the accident, defendants' servant was not engaged in his masters' work or business, but had abandoned the same in order to pursue a purpose exclusively his own, and was at that time actually engaged in that pursuit, the judgment must be reversed, and a new trial granted, with $30 costs to appellants in one case to abide the event.