ARTHUR F. RILEY, an Infant, by ELEANOR D. RILEY,
His Guardian ad Litem, Appellant, *v.* THE STANDARD
OIL COMPANY OF NEW YORK, Respondent.

**Master and servant — injury to pedestrian in collision with
defendant's auto truck operated by his chauffeur — when
question whether chauffeur was engaged in business of master
at time of collision is for the jury.**

A chauffeur employed by defendant was ordered to take an auto
truck and get some goods from the freight yard of a railroad. After
he had gone there and had loaded the truck he discovered some waste
wood which he put on the truck. On leaving the freight yard he
turned, not toward the defendant's mill, but in an opposite direction
to take the wood to his sister's house. This errand served no purpose
of the defendant nor did the defendant have knowledge thereof or
consent to the act of the chauffeur. His course after delivering the
wood and on his return to the mill took him past the entrance to
the freight yard. Before he reached this point and when he had gone

but a short distance from his sister's house he negligently struck the plaintiff with the truck, causing the injuries for which this action is brought. *Held*, that the wood having been delivered, with the return journey back to the mill begun, at some point in the route the chauffeur again engaged in the defendant's business, and that point, in view of all the circumstances, had been reached when the collision occurred; hence, the judgment in favor of the defendant dismissing the complaint should be reversed and a new trial ordered.

*Riley* v. *Standard Oil Co.*, 191 App. Div. 490, modified.

(Argued April 26, 1921; decided May 31, 1921.)

APPEAL from a judgment, entered April 24, 1920, upon an order of the Appellate Division of the Supreme Court in the second judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

*George F. Hickey* and *Lawrence T. Gresser* for appellant. The injury to the infant plaintiff was sustained while the defendant's servant was acting within the scope of his employment and in the course of his master's business. (*Jones* v. *Wiegand*, 134 App. Div. 644; *Williams* v. *Koehler & Co.*, 41 App. Div. 426; *Quinn* v. *Power*, 87 N. Y. 535; *Bila* v. *Bloomingdale*, 184 App. Div. 65; *Geraty* v. *Nat. Ice Co.*, 16 App. Div. 174; *Cosgrove* v. *Ogden*, 49 N. Y. 255; *Quinn* v. *Power*, 87 N. Y. 535; *Barmore* v. *U. S. & P. R. Co.*, 85 Miss. 426; *Rounds* v. *D., L. & W. R. R. Co.*, 64 N. Y. 129; *Ochsenbein* v. *Shapley*, 85 N. Y. 214.) When after delivering the wood the motor truck was started on its journey for the purpose of making delivery of defendant's paint to defendant's paint mill, the chauffeur resumed his master's business and the defendant was from that time responsible for his acts. (*Bila* v. *Bloomingdale*, 184 App. Div. 65; *Jones* v. *Wiegand*, 134 App. Div. 644; *Geraty* v. *National Ice Co.*, 16 App. Div. 174; *Williams* v. *Koehler & Co.*, 41 App. Div. 426; *Quinn* v. *Powers*, 87 N. Y. 535; *Fosdick* v. *Lorber*, 95 Misc. Rep. 574.)

*Andrew F. Van Thun, Jr., Percy G. King* and *John J. Barry* for respondent. The injury to the plaintiff was not sustained while the defendant's servant was acting within the scope of his employment or the further-ance of his master's business, but during a period of abandonment by the servant of the performance of his duty to his master. His course of conduct, at and immediately prior to the time of the occurrence, was not a mere deviation from his duty nor an irregular method of performance, but was the performance of an independent act outside the scope of his employment and for his own purposes. The case is not one where a servant chooses one of two routes of travel, or makes a detour from a regular and ordinary course, while engaged in the service of the master. The servant broke the connection between himself and his master and engaged in the performance of a personal errand. (*Schoenherr* v. *Hartfield*, 172 App. Div. 294; *Hume* v. *Elder*, 178 App. Div. 652; *Reilly* v. *Connable*, 214 N. Y. 586; *O'Brien* v. *Stern Bros.*, 223 N. Y. 290; *Fallon* v. *Swackhamer*, 226 N. Y. 444; *Dockweiler* v. *Am. Piano Co.*, 94 Misc. Rep. 712; 177 App. Div. 912; 226 N. Y. 688.)

ANDREWS, J. Driving directly towards his master's mill; his master's truck loaded with his master's goods for which his master had sent him; his only purpose to deliver them as his master had commanded; with no independent object of his own in mind; Million, a chauffeur employed by the defendant, ran over the plaintiff, negligently, as the jury have said with some evidence to support their finding. Therefore, the com-plaint should not have deen dismissed unless we can say as a matter of law that at the moment of the accident this chauffeur was not engaged in the defendant's business. We reach no such conclusion.

There could be no debate on this subject were not the essential facts obscured or modified by other circum-

stances. It appears, however, that the chauffeur had been ordered to go from the mill to the freight yards of the Long Island railroad, about two and one-half miles away, obtain there some barrels of paint and return at once. After the truck was loaded, Million discovered some waste pieces of wood. He threw them on the truck and on leaving the yards turned, not towards the mill, but in the opposite direction. Four blocks away was the house of a sister, and there he left the wood. This errand served no purpose of the defendant nor did the defendant have knowledge of or consent to the act of the chauffeur. Million then started to return to the mill. His course would lead him back past the entrance to the yards. Before he reached this entrance and when he had gone but a short distance from his sister's house, the accident occurred.

A master is liable for the result of a servant's negligence when the servant is acting in his business; when he still is engaged in the course of his employment. It is not the rule itself but its application that ever causes a doubt. The servant may be acting for himself. He may be engaged in an independent errand of his own. (*Reilly* v. *Connable*, 214 N. Y. 586.) He may abandon his master's service permanently or temporarily. While still doing his master's work he may be also serving a purpose of his own. (*Quinn* v. *Power*, 87 N. Y. 535.) He may be performing his master's work but in a forbidden manner. (*Cosgrove* v. *Ogden*, 49 N. Y. 255.) Many other conditions may arise.

No formula can be stated that will enable us to solve the problem whether at a particular moment a particular servant is engaged in his master's business. We recognize that the precise facts before the court will vary the result. We realize that differences of degree may produce unlike effects. But whatever the facts, the answer depends upon a consideration of what the servant was doing, and why, when, where and how he was doing it.

A servant may be " going on a frolic of his own, without being at all, on his master's business." He may be so distant from the proper scene of his labor, or he may have left his work for such a length of time as to evidence a relinquishment of his employment. Or the circumstances may have a more doubtful meaning. That the servant is where he would not be had he obeyed his master's orders in itself is immaterial except as it may tend to show a permanent or a temporary abandonment of his master's service. Should there be such a temporary abandonment the master again becomes liable for the servant's acts when the latter once more begins to act in his business. Such a re-entry is not effected merely by the mental attitude of the servant. There must be that attitude coupled with a reasonable connection in time and space with the work in which he should be engaged. No hard and fast rule on the subject either of space or time can be applied. It cannot be said of a servant in charge of his master's vehicle who temporarily abandons his line of travel for a purpose of his own that he again becomes a servant only when he reaches a point on his route which he necessarily would have passed had he obeyed his orders. He may choose a different way back. Doubtless this circumstance may be considered in connection with the other facts involved. It is not controlling.

We are not called upon to decide whether the defendant might not have been responsible had this accident occurred while Million was on his way to his sister's house. That would depend on whether this trip is to be regarded as a new and independent journey on his own business, distinct from that of his master (*Story* v. *Ashton*, L. R. 4 Q. B. 476; *McCarthy* v. *Timmins*, 178 Mass. 378) or as a mere deviation from the general route from the mill and back. Considering the short distance and the little time involved, considering that the truck when it left

the yards was loaded with the defendant's goods for delivery to its mill and that it was the general purpose of Million to return there it is quite possible a question of fact would be presented to be decided by a jury. At least, however, with the wood delivered, with the journey back to the mill begun, at some point in the route Million again engaged in the defendant's business. That point, in view of all the circumstances, we think he had reached. (*Jones* v. *Weigand*, 134 App. Div. 644.)

The judgment of the Appellate Division must be modified in so far as it directs the dismissal of the complaint and in so far as it fails to direct a new trial and as so modified affirmed, with costs to abide the event.

McLAUGHLIN, J. (dissenting). This action was brought to recover damages for personal injuries. The plaintiff had a verdict for a substantial amount, upon which judgment was entered. An appeal was taken to the Appellate Division, where the same was unanimously reversed, and the complaint dismissed. The appeal to this court followed.

The defendant, on the 27th day of January, 1919, was and for some time prior thereto had been the owner of an auto truck which was operated by a chauffeur by the name of Million. Assuming that there was sufficient evidence to go to the jury on the question of Million's negligence, then the sole question presented is whether the defendant is responsible therefor. In determining this question there is substantially no dispute between the parties as to the material facts involved. On the day named Million was directed by the defendant to take the truck from its factory to a freight yard of the Long Island railroad, some two and a half miles distant, there take from a railroad car several barrels of paint, place the same upon the truck and return at once to the factory. He did as directed so far as loading the barrels

of paint upon the truck was concerned, then having discovered some wood in the railroad car, placed that upon the truck, and drove it several blocks in an opposite direction from the factory to the residence of his sister. He there unloaded the wood, turned the truck around, and started back over the same route which he had previously passed, but before reaching the yard, ran over the plaintiff, inflicting upon him very serious injuries.

The case was sent to the jury with instructions that the wood having been delivered, and the truck being headed towards the yard where Million had to go in order to reach defendant's factory, " he had resumed his master's service " whatever may have been his relation to the master while he was on his way to deliver the wood.

The Appellate Division reversed the judgment and dismissed the complaint, upon the ground, as appears from the opinion delivered, that the uncontradicted facts showed, at the time the accident occurred, Million was not acting within the scope of his employment, or in furtherance of the master's business, but instead was on a personal errand which defendant had no knowledge of or interest in.

This court is about to reverse the Appellate Division upon the ground that Million having left his sister's residence, and started back towards the yard, had as matter of law reached a point in the route when he again engaged in the defendant's business. I am unable to see how this conclusion can be reached as matter of law. Nor do I think that the facts would justify a finding to this effect. The uncontradicted facts show, as it seems to me, that Million, at the place where and time when the accident occurred, was not acting for defendant. His act at and immediately prior to the accident was not a mere deviation from his duty or an irregular method of its performance. He was doing an independent act of his own and outside of the service for which he had

been employed. When he started from the yard to deliver the wood to his sister's residence, he broke the connection between himself and his master, temporarily terminated the employment, and did not re-enter the same until he had again reached the yard. The return from his sister's residence to the yard was just as much a part of his personal errand as was going to her residence. I cannot believe that the liability of the defendant here is to be determined by the way in which the truck was headed. Rights of property do not rest upon such a slender thread.

The view above expressed that Million did not re-enter the defendant's service until he had returned to the yard after delivering the wood is sustained by authority.

In *Reilly* v. *Connable* (214 N. Y. 586) plaintiff was injured in a collision between an automobile owned by defendant and a bicycle on which plaintiff was riding. At the time of the collision the chauffeur, without the knowledge of the defendant, was using the automobile on a personal errand.

In *Schoenherr* v. *Hartfield* (172 App. Div. 294, 297) a chauffeur had taken from a garage, without the knowledge of his master, an automobile for the purpose of going a short distance on a personal mission. On his return for the purpose of putting the automobile back in the garage, the accident occurred, and it was held defendant was not liable; " that the return was as much a part of the errand, so far as the use of the car was concerned, as the going, for the use of the vehicle for the errand required its return to its place of keep." The court attached no importance to the fact that the accident occurred on the return trip. (See, also, *Rayner* v. *Mitchell*, L. R. 2 C. P. Div. 357, cited in Lord Halsbury's Laws of England, vol. 20, p. 253.)

In *Hartnett* v. *Gryzmish* (218 Mass. 258) plaintiff was injured by a collision between the automobile of defendant, driven by his chauffeur, and a bicycle on which plaintiff

was riding. The chauffeur had taken the car from the garage to go to his house for dinner. He had eaten his dinner and was going from his house to the house of the defendant in order to take out defendant's mother, as he had been directed to do by the master, when the collision occurred. The plaintiff was nonsuited and judgment to this effect was affirmed by the Supreme Court, the court saying: "If the evidence of the chauffeur as to the purpose for which he was driving the car at the time of the accident is to be believed, then the plaintiff has failed to show that he was at that time acting within the scope of his employment, but has shown, rather, that he was acting for his own private purpose."

To the same effect is *Danforth* v. *Fisher* (75 N. H. 111). There the plaintiff was injured through a collision between his horse and defendant's automobile driven by his chauffeur. The chauffeur had been directed by the master to get his supper and be at a certain hotel with the automobile at a designated hour. He ate his supper and then, for the purpose of calling upon a friend, drove a mile or two distant from his boarding place. At the time of the accident he had finished his call and was on his way to keep the appointment at the hotel. Plaintiff was nonsuited and this was affirmed on appeal.

In *Colwell* v. *Ætna Bottle & Stopper Co.* (33 R. I. 531) a chauffeur was ordered to take an automobile to the Bradford Street garage, wash and put it up for the night. He drove the car to the garage and instead of doing as directed took the car to carry another employee to his home, then drove to a restaurant where he had his supper, and was returning to the garage when the accident occurred. It was held that the servant was not acting within the scope of his employment and defendant was not liable for the injuries caused by the servant's negligence while thus acting. The court said: "He had no authority, either express or implied, to use the machine

for the benefit of another employee, or for his own convenience in going to get his supper. His use of the automobile from the time he left the Bradford Street garage and during the whole circuit that he made from that point * * * back to the Bradford Street garage was unauthorized and beyond the scope of his employment. The case falls within a very distinct and important line of cases in this country, the principles of which are well set forth in *Steffen* v. *McNaughton* (142 Wis. 49)."

In *Patterson* v. *Kates* (152 Fed. Rep. 481) the defendant owned an automobile which broke down on the way from Atlantic City to Philadelphia, and which he then left in charge of his chauffeur with directions to repair it and bring it on to Philadelphia. After the driver had reached the Delaware river, and while waiting for the ferry, he consented to take a third person in the machine to a place about a mile back on the road. Having completed this journey, he turned about to go back to the ferry, and while on the way the accident occurred. It was held the chauffeur was not acting at the time of the accident within the scope of his employment and that defendant was not liable.

There are other decisions to the same effect, of which only a few need be cited: *White Oak Coal Co.* v. *Rivoux* (88 Ohio St. 18); *Lotz* v. *Hanlon* (217 Penn. St. 339); *Doran* v. *Thomsen* (76 N. J. L. 754); *Maddox* v. *Brown* (71 Me. 432); *Fiske* v. *Enders* (73 Conn. 338); *Slater* v. *Advance Thresher Co.* (97 Minn. 305); *Sanderson* v. *Collins* (1904, 1 King's Bench, 628).

My conclusion, therefore, is that under the facts of this case, upon reason and the authorities cited, the judgment appealed from is right and should be affirmed.

HOGAN, CARDOZO and CRANE, JJ., concur with ANDREWS, J.; HISCOCK, Ch. J., and CHASE, J., concur with McLAUGHLIN, J.

Judgment accordingly.