# APPELLATE DIVISION

OF THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK

---

CATHARINE WISSNER, Appellant, v. FRANK HARTMANN, Respondent.

Second Department, June 22, 1923.

Master and servant — negligence — plaintiff was injured while riding in coach belonging to defendant — coach was hired by undertaker for funeral at which plaintiff was invited guest — driver of coach was subject to direction of undertaker as to place from and to which coach was to be driven — driver was servant of defendant — error to charge that driving coach to restaurant beyond cemetery was abandonment of contract as matter of law.

In an action to recover damages for injuries suffered by the plaintiff when she was thrown from a coach belonging to the defendant and driven by one of his employees, it appeared that the plaintiff was an invited guest at a funeral; that the undertaker engaged the coach from the defendant, who was a livery stable keeper, for the purpose of carrying the funeral party to and from the cemetery; that the driver of the coach was hired and paid by the defendant; that the driver was directed by the undertaker to go to the place where the funeral was held, to proceed from there to the cemetery, and then to take the occupants of the coach to a restaurant which was beyond the cemetery; that the accident happened while the plaintiff was entering the coach after leaving the restaurant.

Held, that the driver of the coach was in the employ of the defendant at the time of the accident and that it was error to charge, as a matter of law, that the visit to the restaurant was an abandonment of the contract between the defendant and the undertaker.

APPEAL by the plaintiff, Catharine Wissner, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Queens on the 24th day of March, 1923, upon the dismissal of the complaint by direction of the court at the close of the plaintiff's case.

*Thomas J. Higgins* [*Frank Walling* with him on the brief], for the appellant.

*Julius F. Newman* [*Charles Oechler* with him on the brief], for the respondent.

KELLY, P. J.:

The complaint alleges that on March 27, 1922, the defendant rented to one Anna Brockner a coach drawn by two horses driven by defendant, his agent, servant or employee, to carry said Anna Brockner and such persons as she might invite to accompany her, from 159 Prospect avenue, borough of Queens, to Mount Olivet Cemetery in said borough, and from said cemetery to return to the Prospect avenue address; that plaintiff on the invitation of said Anna Brockner entered the coach and was carried therein from the Prospect avenue address to the cemetery, and that while re-entering the coach at the cemetery for the return trip, she was injured through the negligence of the driver who started the coach suddenly with a violent jerk, throwing plaintiff to the ground.

The answer is substantially a general denial with a separate defense charging plaintiff with contributory negligence.

At the trial the complaint was amended so as to allege a renting of the coach horses and driver by defendant to carry the relatives, friends and invited guests at the funeral of one Ferdinand Brockner to the cemetery and back, instead of the original allegation that the renting was to Anna Brockner, and also to allege that Anna Brockner, who was the widow of deceased, had charge of the funeral arrangements, and that plaintiff at her invitation " became the guest at said funeral."

There is no dispute that on the evidence a question of fact was presented as to whether the plaintiff's injuries were due to the negligence of the coach driver. Plaintiff testified that as she was entering the coach for the return trip the driver was off the box or driver's seat and was standing on the ground near the coach door. The horses, uncontrolled, suddenly bolted and plaintiff was thrown to the ground.

The coach and the horses were the property of the defendant, who was engaged in the business of renting out coaches for funerals. He hired and paid the drivers, including the driver of the coach in question; he, alone, had the right to discharge them, and their duty was to drive coaches to funerals. On this particular day one Baque, the undertaker who had charge of the funeral, hired seven coaches and a hearse from defendant for the funeral to Mount Olivet Cemetery. Defendant, called as a witness for plaintiff, testified that he instructed the driver to report to Baque

and go wherever Baque told him. While the undertaker testified that he told defendant that he wanted the hearse and coaches to go to Mount Olivet Cemetery and while defendant testified on the direct that he rented the coaches to go to Mount Olivet Cemetery, on his cross-examination (by his own counsel) he said he did not understand the preceding question and that as matter of fact he did not know in advance to what cemetery the coaches were going. He charged the undertaker seven dollars for each coach, from which he allowed a rebate of ten per cent for the undertaker's service in getting him the business.

The driver of the coach testified that he reported to the undertaker who directed him to go to the funeral house where he took on the mourners including plaintiff and followed the hearse to Mount Olivet Cemetery. After the interment he was told by the undertaker to take the occupants of the coach to a restaurant for refreshments, which he accordingly did, and all of them entered the restaurant, where they had something to eat. After leaving the restaurant he drove the passengers home and then went with the coach and horses to defendant's stable. The accident to plaintiff occurred as she was entering the coach at the restaurant for the home journey.

The undertaker, Baque, testified that after the interment, after coming out of the cemetery, the party went on Metropolitan avenue to the restaurant which was opposite Lutheran Cemetery. He said that the restaurant was about a mile further along the road away from home. Mount Olivet Cemetery adjoins Lutheran Cemetery. When the interment was completed the widow said to the undertaker that she did not want the mourners to start back home without having something to eat, and she suggested going to the restaurant opposite Lutheran Cemetery as the only place where they could be served. The driver of the coach testified that all of the cemeteries were about the same place, all in the same circle. The plaintiff endeavored to prove by the undertaker that it was the custom to stop for refreshments after the burial, but upon defendant's objection the learned trial justice said that the custom was immaterial, " If they did it, that is all that was necessary."

At the end of plaintiff's case the defendant moved to dismiss the complaint, and the learned trial justice said: " The evidence shows here that this defendant, who was a livery stable keeper, hired his coaches to Baque, who is an undertaker, under an agreement by which Baque was to pay a consideration to the defendant; the defendant directed his coaches to report to Baque's undertaking establishment; the defendant did not know

the name of the persons who were to be served; in fact he did not know, and it was little of his concern, from what house the body was to be taken to the cemetery or what passengers rode in his coach; so that after the coaches arrived at Baque's place of business they were under the complete control of Baque, in that he directed the course where they were to go. It is true he had no power to discharge the drivers, but he did have sole control in the sense of directing them where they must go. After arriving at the cemetery the driver of the carriage which injured this woman was, with others, directed to go to a place for refreshments, that place being out of the direction of their home, that is, the livery stable of this defendant; so that when these drivers went to that place they not only digressed but they really abandoned — had they been in the employ for the time being of this defendant — they abandoned his service; so that upon two theories here it seems to me the plaintiff hasn't made out a case, *first*, that the man for the time being was not in the employ of Hartmann, but was in the employ of Baque; *second*, if it be held he was in the employ of Hartmann there was an abandonment of the work amounting to more than a digression. He abandoned his idea of going home for the time being, which was his duty, and went to a restaurant. So I will have to dismiss this complaint. Mr. Higgins: I except to your Honor's ruling."

I am forced to disagree with the learned trial justice on both propositions. I think the driver of the coach was in the employment of the defendant at the time of the accident, and I think it was error to decide as matter of law that the visit to the restaurant was an abandonment of the contract between Hartmann and the undertaker.

Upon the first point, it seems to me, the case is within the principle of *Schmedes* v. *Deffaa* (214 N. Y. 675), where the Court of Appeals reversed this court, in the First Department, upon the dissenting opinion of MILLER, J., concurred in by LAUGHLIN, J. (153 App. Div. 819). The *Schmedes* case has been frequently cited. The facts were similar to the case at bar, except that the undertaker in that case ordered the coaches from Deffaa, the defendant. Deffaa did not have sufficient coaches to fill the order and thereupon hired them from another liveryman. He sent his own coaches and drivers together with those hired from the second liveryman to the undertaker. The undertaker gave the necessary directions to all of the coach drivers. The plaintiff was injured through the negligence of one of the drivers hired from the second liveryman.

The Appellate Division, by a divided court, affirmed a dismissal

of the complaint upon the ground that Deffaa, the defendant, was not liable, as he " acted merely as a middleman in the transaction, and who was neither the master of the driver nor the one who directed his movements after he had reported to the undertaker."

Justices MILLER and LAUGHLIN dissented, and the Court of Appeals reversed the nonsuit upon Mr. Justice MILLER's opinion, in which he said: " I agree with Mr. Justice SCOTT that the driver, whose negligence caused the accident in this case, was not the servant of the undertaker. *Kellogg* v. *Church Charity Foundation* (203 N. Y. 191) is plainly an authority for that proposition. The hiring by the undertaker was precisely like that of the ordinary hiring of a livery turnout, referred to by Mr. Justice MOODY in *Standard Oil Company* v. *Anderson* (212 U. S. 215), as the simplest and one of the earliest decided cases. If, then, instead of being borrowed for the occasion, the driver had been one of the defendant's regular employees, there could be no doubt of the latter's liability.  *  *  *  As between the undertaker and the defendant, the latter was 'an independent contractor, and the driver, though subject to the former's instructions as to where he should go, was doing the latter's work and was for the time being under his control, precisely as though in his general employment. As between the general employer and the defendant, the driver was merely loaned by the former to the latter.  *  *  *  The driver was certainly not doing the work of his general employer because the latter had not engaged to do that work. He was not doing the work of the undertaker, because the latter had employed the defendant as an independent contractor to do it. The work, then, was that of the defendant, done by the agencies supplied by him and subject to his control, except in so far as the undertaker might direct the course of the journey."

And the Court of Appeals said in *Hartell* v. *Simonson & Son Co.* (218 N. Y. 345, 349): " If the general employer enters into a contract to do the work of another, as an independent contractor, his servants do not become the servants of the person with whom he thus contracts, and the latter is not liable for their negligence."

So, in the case at bar, I think the coach driver was engaged in the service of the defendant, his general employer, at the time of the accident.

Nor can it be said as matter of law that the visit of the party to the restaurant for refreshment after the burial of the dead was an abandonment of the employment of the defendant's coach and driver. Certainly there was nothing unusual or extraordinary in the occurrence. The defendant placed no limit on his driver when he sent him to the undertaker. He asserts that he did not know

to what cemetery the funeral was to go. The restaurant was opposite Lutheran Cemetery and further along the road than the entrance to Mount Olivet Cemetery, but the two cemeteries adjoin, and the widow said that this was the only place to go to " have a bite to eat and a little refreshments; * * * where we will get something decent to eat." I think it was at least a question of fact upon this evidence whether the coach driver was beyond the " ambit of his duty " or whether he had abandoned his duty in taking the mourners to the hotel. " Location in time and space are circumstances that may guide the judgment, but will not be suffered to control it, divorced from other circumstances that may characterize the intent of the transaction." (*Fiocco* v. *Carver*, 234 N. Y. 219.) In *Jones* v. *Weigand* (134 App. Div. 644), cited with approval in *Riley* v. *Standard Oil Co.* (231 N. Y. 301, 306), the coach driver after returning the mourners from the cemetery to their homes in Brooklyn, went back to Queens county to visit his sweetheart, and, having concluded the visit, started to turn his coach around to return to the stable in Brooklyn. And Mr. Justice MILLER, writing for this court, said (referring to the claim that the driver had not deviated from his regular route to the stable): " But if the foregoing be doubtful it seems plain that when the driver returned to the coach for the purpose of taking it back to the defendant's stable, he re-entered upon his master's service, and resumed the business which he had temporarily abandoned."

In *Jones* v. *Weigand* the complaint was dismissed at the trial and the judgment was reversed in this court. When *Riley* v. *Standard Oil Co.* came here (191 App. Div. 490) we took occasion to say that the doctrine in *Jones* v. *Weigand* should not be extended beyond the facts in that case. The Court of Appeals reversed this court in the *Riley Case* (231 N. Y. 301), and cited *Jones* v. *Weigand* with approval.

Under these decisions I think it was for the jury to say on the facts in the case at bar, whether, assuming that the driver had deviated from his employment in driving to the restaurant (which I do not concede), he had not repented and resumed his employment when he was loading the guests back in the coach for the purpose of taking them home after their pause for refreshment.

The judgment should be reversed upon the law and the facts, and a new trial granted, with costs to appellant to abide the event.

RICH, JAYCOX, KELBY and YOUNG, JJ., concur.

Judgment reversed upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event.