■ DONALD RIVIELLO, Respondent, v JOSEPH WALDRON et al., Appellants.—Judgment, Supreme Court, Bronx County, entered, as resettled, April 20, 1977, reversed, on the law, and the complaint dismissed as to defendant-appellant Raybele Tavern, Inc., with $60 costs and disbursements of this appeal payable to appellant Raybele by respondent. Defendant-appellant Waldron, a part-time employee of the tavern, was, we are told, instructed by his employer to socialize with the customers. During one such period, he essayed to demonstrate self-defense with a penknife, drawing it from his pocket fully opened and, in the display, causing the blade to come into contact with plaintiff-respondent's eye, with resultant serious injury. Whatever his instructions, there was no evidence sufficient to raise even an issue of fact for the jury as to whether playing with knives was a part of his duty or at all within the scope of his employment as a sandwich maker. "An act is within the scope of a servant's employment when it is necessary to accomplish the purpose of his employment and intended for that purpose. An employee acts in the scope of his employment when he is doing something in furtherance of the duties he owes his employer and when the employer is, or could be, exercising some control directly or indirectly over the employee's activities *(Lundberg v State of New York,* 25 NY2d 467). The act of the employee for which the employer is sought to be held liable may not be outside the general scope of the employment or done with a purpose foreign to the interests of the employer *(Sauter v New York Tribune,* 305 NY 442, 444)." *(Moritz v Pines Hotel,* 52 AD2d 1020.) The tortious act, as described alike here and in the dissent, could not conceivably be deemed, without specific instruction by the employer—and there was none—to be within the scope of Waldron's employment. Nor is *Sims v Bergamo* (3 NY2d 531), cited in the dissent, apropos as here applied. There, the act performed

by the bartender, though ill conceived for the purpose of protecting his employer's property by application of excessive force to eject an unruly patron, was still more than arguably encompassed within his duty to his employer. The complaint should have been dismissed as to the corporate defendant at the end of plaintiff's case. Were we not dismissing, on the law, we would remand for a new trial on the ground that the verdict of the jury was against the weight of evidence. Concur—Lane and Markewich, JJ.; Lupiano, J. P., concurs in a memorandum; Fein and Sandler, JJ., each dissent in separate memoranda: Lupiano, J. (concurring). The dissent contains speculative conclusions which are set forth without the force of acceptable evidential worth. Giving the plaintiff the benefit of every favorable inference which may be drawn from the facts of the record, no liability is imposed on Raybele Tavern, Inc., the employer, under the doctrine of *respondeat superior.* Under that doctrine, the act of the employee for which the employer is sought to be held liable may not be outside the general scope of the employment or done with a purpose foreign to the interest of the employer *(Becker v City of New York,* 2 NY2d 226, 231; *Sauter v New York Tribune,* 305 NY 442, 444). As the record fails to provide a reasonable predicate for the conclusion that the negligent act was within the scope of Waldron's employment, it must be viewed as having occurred outside that employment as a matter of law. Waldron's unexpected knife flipping was not actuated by a purpose to serve Raybele. Assuming Waldron was available to prepare food for bar patrons at the time the accident occurred, he was not engaged in preparing or serving food when he flipped his own knife accidentally in plaintiff's eye. Indeed, Waldron was satisfying a personal desire to converse with friends. There is no explanation of his knife play which in any manner connects it with furthering the duties entrusted to him by his employer. Not only was this act dissimilar to any act he was authorized to perform, it was an act not commonly done by food preparers or foreseeable by his employer. His employment of the knife was a departure from normal methods of preparing and serving food which the employer had no reason to expect. "An employee acts in the scope of his employment when he is doing something in furtherance of the duties he owes to his employer" *(Lundberg v State of New York,* 25 NY2d 467, 470). In refusing defense counsel's request to dismiss the complaint against the employer, the trial court relied on what it perceived to be a duty imposed by the employer upon Waldron, to wit, "fraternizing with customers." There is no evidence in the record sufficient to indicate that Waldron was hired to fraternize. Indeed, the evidence indicates that the employee was hired to increase the employer's business by providing food service, not by spending time with the customers. I am in complete accord with the majority that the complaint should have been dismissed as to the corporate defendant, the employer, at the end of plaintiff's case. Fein, J. (dissenting). I agree with Justice Sandler that the judgment should be affirmed, but not for the reasons stated. The majority, the concurrence and the dissent have each adopted one of several conflicting accounts as to the occurrence of the accident to justify and reinforce the result reached. The divergence of opinion as to the happening of the accident, however, only serves to strengthen the conclusion of the Trial Justice that the precise manner in which the accident occurred was essentially a question of fact for the jury, as was determination of the issue as to whether the accident occurred in the course and within the scope of defendant Waldron's employment, so as to subject Raybele Tavern to liability under the doctrine of *respondeat superior.* The nature of Waldron's employment was likewise a matter for

resolution by the triers of the fact. Contrary to the majority's position, the issue is not so clear as to be susceptible to disposition as a matter of law. The majority views the evidence as conclusive that Waldron was fooling around at the time of the incident and that playing with knives was not part of his duties, nor within the scope of his employment as a sandwich maker. The concurring opinion reasons that Waldron was not engaged in preparing or serving food when he flipped his knife in plaintiff's eye and, therefore, the unexpected flipping was not actuated to serve his employer. Overlooked is plaintiff's account that Waldron had gone to the kitchen to fill a food order at about 11:10 P.M., an act which was arguably within the scope of his employment, although admittedly performed after his regular working hours. Plaintiff testified that when Waldron returned about five minutes later, plaintiff turned toward him, and Waldron "caught me right in the eye with the knife. Then he said to me, as he caught me in the eye with the knife, he said, 'I'm sorry. I don't know what happened'." Such testimony, considered in the light most favorable to plaintiff, suggests the occurrence of an accident plain and simple, which the jury could, and evidently did, find resulted from Waldron's negligence committed in the course and within the scope of his employment, so as to impose liability upon Raybele Tavern. Although there was other evidence that plaintiff and Waldron were fooling around and that Waldron was flipping the knife in the air, the weight of the evidence and the appropriate credit to be accorded it was essentially a matter for the jury. The majority, by its adoption of one view of such evidence, in my opinion, improperly usurps the function of the triers of the facts. Sandler, J. (dissenting). Plaintiff, a patron of the Pot Belly Pub, a bar and grill owned by the defendant-appellant Raybele Tavern, Inc. (Raybele) lost the sight of one eye as the result of the unintentional but grossly negligent act of the defendant Waldron, an employee of Raybele, in flicking the plaintiff's eye with an open knife. On this appeal by Raybele from a judgment in plaintiff's favor following a jury trial, the principal issue is whether the evidence as a matter of law is insufficient to establish Raybele's responsibility under the doctrine of *respondeat superior.* Although this issue is a close one, and the facts presented carry that doctrine close to its outer limits, I am persuaded that enough was shown to make the issue a factual one for the jury's determination. Reviewing the evidence in the light most favorable to plaintiff, as we are required to do, the following appears to have occurred on the evening of this tragic occurrence. Plaintiff, a long-time regular patron of the tavern, arrived at about 9:30 P.M. on January 26, 1973. It was a Friday evening and there were some 40 or 50 people in the bar when he arrived. Plaintiff observed Joseph Waldron, a friend of his, preparing hamburgers and sandwiches in the kitchen at the rear of the bar and serving them to customers. Shortly after 10:30 P.M. plaintiff moved in that direction and began speaking to Waldron and another friend, Richard Bannon. The kitchen lights were on and the kitchen was open. In the course of a social conversation that followed, a topic discussed was the problem of self-protection in what had become a dangerous neighborhood. Waldron told the plaintiff that he carried a knife for protection to which plaintiff responded that he would not carry one because he did not know how to use it. A time came when Waldron went into the kitchen to do some work. He returned a few minutes later, and as the plaintiff turned toward him, Waldron flicked open a knife with a swinging motion of his arm and accidently struck plaintiff in his right eye. The evidence is clear that Waldron had been employed some time previously by Riviello as a part-time chef to prepare hamburgers and the like, with the added responsibility of

tending bar in the absence of the bartender. The doctrine of *respondeat superior* is, of course, long standing, and the principles governing its application have been stated with minor variations in innumerable court decisions. As good a general statement as any is that set forth in the recommended charge in the Pattern Jury Instructions: "An employer is not responsible for the act of his employee unless the act is in furtherance of the employer's business and within the scope of the employee's authority. An act is within the scope of an employee's authority if it is performed while he is engaged generally in the business of his employer to which he was assigned, or if his act may be reasonably said to be necessary or incidental to such employment. The employer need not have authorized the specific act in question. If you find that A, within the scope of his authority and in furtherance of the defendant's business negligently caused injury to the plaintiff, you will hold defendant responsible for such act." (PJI 2:235.) A useful amplification of some of these principles was presented in *Jones v Weigand* (134 App Div 644, 645-646): "mere disregard of instructions or deviation from the line of his duty does not relieve the master of responsibility. Wrongful acts are usually in violation of orders or in deviation from the strict line of duty. The test is whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions. If the servant for purposes of his own departs from the line of his duty so that for the time being his acts constitute an abandonment of his service, the master is not liable; but to constitute an abandonment of the service the servant must be serving his own or some other person's purposes wholly independent of his master's business." Waldron, of course, was not actually engaged in the preparation of food at the moment the injury was inflicted, nor did the plaintiff so contend at the trial. Rather, the plaintiff's position has been that the defendant's obligations went beyond those of food preparation or service of liquor. The thesis, adequately supported at all critical points by the evidence, is as follows. The Pot Belly Pub was a neighborhood tavern primarily attended by people from the immediate area who went there on a regular basis not only to imbibe liquor but to enjoy the good fellowship of a convivial atmosphere. Waldron, a neighborhood person and long-time patron of the bar, knew well over half of those who customarily patronized Pot Belly. His employment did not result from an assessment of his special skill in the preparation of hamburgers but rather, at least in part, from the hope that his presence as an employee would maintain and extend the business of the tavern. Thus it was realistically a part of his employment, whether it was viewed as incidental or perhaps even integral, that he would engage in social conversations with the patrons of the bar and seek to add to its friendly and hospitable aspect. Although neither Waldron nor Raybele's owner acknowledged explicitly that this was part of the employment arrangement, the circumstances described above, coupled with testimony as to Waldron's actual behavior on the evening in question, make this a reasonable inference and one that a jury might properly reach. Unquestionably there is a preliminary difficulty in perceiving how Waldron's swinging motion with an open knife could be thought to have furthered the interest of his employer. The difficulty seems to be more apparent than real. Although the act was extremely foolish and its execution deplorable, it does not differ essentially from any number of reckless and irresponsible acts of employees that have been found to fix responsibility upon their employers. As one of many illustrations I do not think that Waldron's action was more reckless and less calculated to serve the interest of Raybele than the action of the bartender

in *Sims v Bergamo* (3 NY2d 531), who allegedly assaulted a patron of the bar. This jury could reasonably conclude that Waldron's motion with the open knife was a continuation of the social conversation in which the plaintiff had stated that he would not carry a knife because he would not know how to use it. In short, a jury could find that Waldron was showing the plaintiff how the knife could be used as a form of protection. The action that caused the injury here thus could have been reasonably perceived by the jury as an integral part of a social interchange in which Waldron had engaged with the plaintiff and which in turn was a part of his employment responsibilities. Although the action was unusual in character, it fits clearly within the basic principles or *respondeat superior* described above. Nor do I see any principled reason why the patron of a bar who has lost the use of an eye as a result of the negligence of the defendant's employee under these circumstances should, in distinction to the employer, bear the entire pain and expense of that tragic loss. Factual issues were clearly presented to the jury which they resolved in accordance with a reasonable perception of the evidence. Their conscientious judgment should not here be disturbed. Accordingly, the judgment entered should be affirmed.